```
       IN THE UNITED STATES DISTRICT COURT FOR THE
               EASTERN DISTRICT OF OKLAHOMA
```

JOHANNA W. HUMMINGBIRD,            )
                                   )
              Plaintiff,           )
                                   )
                                   )   Case No. CIV-21-039-RAW-KEW
                                   )
COMMISSIONER OF THE SOCIAL         )
SECURITY ADMINISTRATION,           )
                                   )
              Defendant.           )

## REPORT AND RECOMMENDATION

Plaintiff Johanna W. Hummingbird (the "Claimant") requests judicial review of the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying her application for disability benefits under the Social Security Act. Claimant appeals the decision of the Administrative Law Judge ("ALJ") and asserts the Commissioner erred because the ALJ incorrectly determined she was not disabled. For the reasons discussed below, it is the recommendation of the undersigned that the Commissioner's decision be AFFIRMED.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment. . ." 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairments are of such severity that he is not only unable to do his previous work

but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . ." 42 U.S.C. § 423(d)(2)(A). Social Security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal standards were applied. *Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997) (citation omitted). The term "substantial evidence" has been interpreted by the United States Supreme Court

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. 20 C.F.R. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity (step one) or if the claimant's impairment is not medically severe (step two), disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to step four, where claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work. If the claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which the claimant – taking into account his age, education, work experience, and RFC – can perform. Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. *See generally, Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

to require "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971), quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). The court may not re-weigh the evidence nor substitute its discretion for that of the agency. *Casias v. Secretary of Health & Human Servs.*, 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the court must review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also*, *Casias*, 933 F.2d at 800-01.

**Claimant's Background**

Claimant was 43 years old at the time of the ALJ's decision. She has a high school education and past relevant work as a cleaner, administrative assistant, graphic designer, marketing manager, material handler, and data entry clerk. She alleges an inability to work beginning on October 2, 2013, which she later amended to April 1, 2019, due to limitations resulting from post-traumatic stress disorder ("PTSD"), depressive disorder with psychotic features, and anxiety.

**Procedural History**

On April 1, 2020, Claimant filed an application for disability insurance benefits under Title II (42 U.S.C. § 401, *et seq.*) of

3

the Social Security Act. On May 6, 2020, she filed an application for supplemental security income benefits pursuant to Title XVI (42 U.S.C. § 1381, *et seq*.) of the Social Security Act. Her applications were denied initially and upon reconsideration. On June 23, 2020, ALJ Deirdre Dexter conducted a hearing by telephone from Tulsa, Oklahoma, and Claimant testified from Coweta, Oklahoma. On July 17, 2020, the ALJ entered an unfavorable decision. Claimant requested review by the Appeals Council, and on December 2, 2020, it denied review. As a result, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481.

## Decision of the Administrative Law Judge

The ALJ made her decision at step five of the sequential evaluation. She determined that while Claimant suffered from severe impairments, Claimant did not meet a listing and retained the residual functional capacity ("RFC") to perform a full range of work at all exertional levels with additional limitations.

## Errors Alleged for Review

Claimant asserts the ALJ committed error by (1) failing to properly evaluate, consider, and account for Claimant's mental health issues in the hypothetical question to the VE and in the RFC determination, and (2) failing to properly assess the consistency of her complaints with the evidence of record.

4

**Consideration of Mental Health Limitations**

In her decision, the ALJ found Claimant suffered from severe impairments of depressive disorder and PTSD. (Tr. 18). She determined Claimant could perform a full range of work at all exertional levels with the following non-exertional limitations:

> [T]he [C]laimant is able to understand, remember, and carry out simple tasks of 1 to 2 steps, consistent with SVP 1 and SVP 2 work, with routine supervision. The [C]laimant is able to sustain attention and concentration for up to 2 hours at a time when performing simple tasks of 1 to 2 steps and is able to sustain the mental demands associated with performing simple tasks of 1 to 2 steps throughout an ordinary workday and workweek. She is able to interact with supervisors as needed to receive instructions, learn tasks and accept criticism, but the job should not involve frequent interaction or cooperation with supervisors in order to complete work tasks. The [C]laimant is able to work in proximity to co-workers and as needed to learn work tasks, but the job should not involve frequent interaction or cooperation with co-workers in order to complete work tasks. The job should not involve interacting with the general public. The [C]laimant is able to adapt to a work setting and to forewarned changes in a usually stable work setting.

(Tr. 20-21).

After consultation with a VE, the ALJ determined Claimant could perform the representative jobs of floor waxer, conveyor feeder offbearer, and industrial sweeper cleaner, all of which the ALJ found existed in sufficient numbers in the national economy. (Tr. 26, 66-67). As a result, the ALJ concluded Claimant had not been under a disability from October 2, 2013, through the date of the decision. (Tr. 27).

Claimant makes several arguments that the ALJ's mental RFC assessment is not supported by substantial evidence. She argues that the ALJ failed to properly consider the evidence, which showed that she had greater mental limitations than what the ALJ accounted for in the RFC assessment. She also contends that no examining mental health expert provided an opinion regarding Claimant's mental health limitations, which should have prompted the ALJ to order a consultative examination to assess Claimant's mental limitations.

"[R]esidual functional capacity consists of those activities that a claimant can still perform on a regular and continuing basis despite his or her physical limitations." *White v. Barnhart*, 287 F.3d 903, 906 n.2 (10th Cir. 2001). A residual functional capacity assessment "must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts . . . and nonmedical evidence." Soc. Sec. Rul. 96-8p, 1996 WL 374184, *7 (July 2, 1996). The ALJ must also discuss the individual's ability to perform sustained work activities in an ordinary work setting on a "regular and continuing basis" and describe the maximum amount of work-related activity the individual can perform based on evidence contained in the case record. *Id*. The ALJ must "explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved." *Id*. However, there is "no requirement in the

regulations for a direct correspondence between an RFC finding and a specific medical opinion on the functional capacity in question." *Chapo v. Astrue*, 682 F.3d 1285, 1288 (10th Cir. 2012).

"[I]n addition to discussing the evidence supporting his decision, the ALJ must also discuss the uncontroverted evidence [s]he chooses not to rely upon, as well as significantly probative evidence [s]he rejects." *Clifton v. Chater*, 79 F.3d 1007, 1010 (10th Cir. 1996) (citation omitted). She may not "pick and choose among medical reports, using portions of evidence favorable to h[er] position while ignoring other evidence." *Hardman v. Barnhart*, 362 F.3d 676, 681 (10th Cir. 2004), citing *Switzer v. Heckler*, 742 F.2d 382, 385-86 (7th Cir. 1984). However, an ALJ is not required to discuss all of the evidence in the record. *See Briggs ex rel. Briggs v. Massanari*, 248 F.3d 1235, 1239 (10th Cir. 2001). "When the ALJ does not need to reject or weigh evidence unfavorably in order to determine a claimant's RFC, the need for express analysis is weakened." *Howard v. Barnhart*, 379 F.3d 945, 947 (10th Cir. 2004). Moreover, a court cannot reweigh the evidence, as it reviews only the sufficiency of the evidence. *See Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007).

Claimant argues that the ALJ did not account for her findings of moderate limitations in understanding, remembering, or applying information, in interacting with others, and in concentration, persistence, and pace in the RFC determination. Specifically, she

asserts the ALJ ignored her CAR scores, ignored evidence that she suffered from hallucinations, paranoia, and psychotic breaks, and failed to account for her psychotic episodes and her inability to stay on task.

In reaching the RFC determination, the ALJ discussed the probative evidence in the record of Claimant's mental health treatment in detail. This included Claimant's in-patient treatment at Laureate Psychiatric Clinic and Hospital and treatment at Family and Children Services, Coweta Indian Health, and Counseling and Recovery Services of Oklahoma. Although the ALJ did not specifically discuss Claimant's CAR scores in the decision, she stated she considered all the evidence. (Tr. 16, 18, 20). *See Watkins v. Colvin*, 2017 WL 499684, at *3 (N.D. Okla., Feb. 7, 2017) (unpublished) (discussing CAR scores and noting that "[t]he court's 'general practice . . . is to take a lower tribunal at its word when it declares that it has considered a matter.'"), quoting *Hackett v. Barnhart*, 395 F.3d 1168, 1173 (10th Cir. 2005).

Moreover, the ALJ considered Claimant's reported hallucinations, paranoia, delusions, psychotic breaks, difficulty interacting with others, and her concentration, persistence, and pace when discussing the evidence. She not only considered Claimant's testimony (Tr. 21), but she also considered the objective medical evidence in detail. (Tr. 22-24). For example, the ALJ discussed that after Claimant was discharged from her in-

8

patient treatment at Laureate in June of 2019, Claimant received treatment at Family and Children Services in July of 2019, wherein she reported some increased anxiety because her ex-husband had moved close to her, but she denied hallucinations. (Tr. 22, 554). In August of 2019, Claimant detailed past episodes of hallucinations and delusions, but she denied having auditory or visual hallucinations currently. She was oriented to person, place, time, and situation, and made eye contact. Although her thought content included delusions, Claimant had insight into them, intact associations, goal-directed and logical thought process, and average fund of knowledge. Regarding memory and attention, Claimant's recall and memory was intact, attention/concentration was attentive, and she demonstrated fair insight and judgment. (Tr. 22, 562-64). Later in August of 2019, Claimant's thought process was normal, memory was adequate, and she was described as having what appeared to be average IQ. She denied hallucinations and psychotic symptoms. (Tr. 23, 541-42).

In March of 2020, Claimant sought refills of her medications, at which time she reported her mood was good, but she had increased anxiety because of contact with her ex-husband. She denied sleep problems, hallucinations, and delusions. (Tr. 24, 667-69). In May of 2020, Claimant denied hallucinations, paranoia, and delusions. She had linear and goal-directed thought processes, normal associations, good attention, stable concentration, good insight,

no impairment in judgment, grossly intact memory, and appropriate fund of knowledge. (Tr. 24, 755-60).

The ALJ also discussed the state agency psychologists' opinions when determining Claimant's mental RFC. (Tr. 25, 78-80, 93-95, 574). She found the September of 2019 opinion by Lisa Swisher, Ph.D., persuasive because Dr. Swisher had the opportunity to review the majority of Claimant's medical records. The opinion limited Claimant to simple tasks of one to two steps, less than frequent interactions with co-workers, no interaction with the general public, and some changes in the work setting. (Tr. 25, 93-95, 574).

Based on the evidence of record, the ALJ adequately considered the medical evidence of Claimant's mental limitations when assessing the RFC.

Claimant next maintains that with the limitations in her RFC, she would be unable to complete the training associated with the jobs the ALJ determined she could perform in the national economy. The VE testified Claimant could perform the jobs of floor waxer, conveyor feeder-offbearer, and industrial sweeper-cleaner. She further testified her testimony was consistent with the Dictionary of Occupational Titles ("DOT"). The hypothetical question to the VE included all the limitations the ALJ included in the RFC. (Tr. 65-68). This Court finds no error in this regard.

Finally, Claimant argues that the ALJ erred in relying on the non-examining state agency psychologists' opinion to formulate the mental RFC, as there was no opinion from an examining psychologist in the record. She maintains that the ALJ should have ordered a consultative psychological evaluation.

As discussed herein, the ALJ adequately addressed Claimant's mental impairments in the RFC assessment. She discussed the evidence and explained why she included certain mental limitations in the RFC. This Court finds no error by the ALJ in relying on the opinion of the state agency psychologist when determining Claimant's RFC assessment.

Moreover, there was no error by the ALJ for not ordering a mental consultative examination of Claimant. The record contained sufficient information for the ALJ to make a mental RFC determination, and Claimant's counsel did not request any additional development of the record by the ALJ. *See Cowan v. Astrue*, 552 F.3d 1182, 1187-88 (10th Cir. 2008) (noting ALJ's responsibility for development of the record and that the duty is satisfied when the record contains sufficient information to make a disability determination and there was no request by counsel for further development), quoting *Hawkins*, 113 F.3d at 1167-68 ("[W]hen the claimant is represented by counsel at the administrative hearing, the ALJ should ordinarily be entitled to rely on the claimant's counsel to structure and present claimant's

case in a way that the claimant's claims are adequately explored. Thus, in a counseled case, the ALJ may ordinarily require counsel to identify the issue or issues requiring further development.") (citation omitted). Here, there was no request by counsel for a consultative psychological examination of Claimant. (Tr. 34-70).

Based on the evidence of her mental impairments, the ALJ determined Claimant was limited to simple tasks of one to two steps with routine supervision and could sustain concentration for up to two hours while performing such tasks and throughout an ordinary workday and workweek. Claimant could interact with supervisors as needed to receive instructions, learn tasks, and accept criticism, but there would not be frequent interaction or cooperation with supervisors to complete work tasks. She could likewise work in proximity to co-workers to learn work tasks but would not have frequent interaction or cooperation with co-workers to do so. Claimant could not interact with the general public, but she could adapt to a work setting with forewarned changes in a usually stable work setting. (Tr. 21). This Court cannot re-weigh the evidence or substitute its judgment for that of the Commissioner, *see Casias*, 933 F.2d at 800; *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007), and it therefore finds that the ALJ adequately accounted for Claimant's mental limitations in the RFC.

**Evaluation of Symptoms**

Claimant further takes issue with the ALJ's evaluation of her reported symptoms based upon all the errors the ALJ made in assessing Claimant's mental RFC, and because the ALJ failed to support her consistency determination with a proper consideration of the pertinent factors.

Deference must be given to an ALJ's evaluation of Claimant's pain or symptoms, unless there is an indication the ALJ misread the medical evidence as a whole. *See Casias*, 933 F.2d at 801. Any findings by the ALJ "should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995) (quotation omitted). The ALJ's decision "must contain specific reasons for the weight given to the [claimant's] symptoms, be consistent with and supported by the evidence, and be clearly articulated so the [claimant] and any subsequent reviewer can assess how the [ALJ] evaluated the [claimant's] symptoms." Soc. Sec. Rul. 16-3p, 2017 WL 5180304, at *10 (Oct. 25, 2017). However, an ALJ is not required to conduct a "formalistic factor-by-factor recitation of the evidence[,]" but he must set forth the specific evidence upon which he relied. *Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000).

As part of her evaluation of Claimant's subjective symptoms, the ALJ noted the two-step process set forth in Social Security

13

Ruling 16-3p and the requirements under 20 C.F.R. §§ 404.1529, 416.929. (Tr. 21). She specifically summarized Claimant's subjective complaints based upon her testimony (Tr. 21) and had previously discussed her functional report and the third-party report provided by Claimant's cousin. (Tr. 19-20). Moreover, the ALJ discussed the evidence in detail when considering the consistency of Claimant's subjective complaints, including that Claimant received unemployment benefits and looked for work after April of 2019 (Tr. 21, 44), that her mental status examinations throughout showed mostly normal objective findings (Tr. 22-24), her daily activities (Tr. 19-21), and her treatment. (Tr. 22-23).

The ALJ concluded that Claimant's RFC assessment was supported by the "normal objective findings; the [C]laimant's reports of activities of daily living; and the medical evidence as a whole." (Tr. 25). Her evaluation of Claimant's subjective complaints was linked to the evidence and included specific reasons for the weight given to Claimant's symptoms. This Court finds no error in the ALJ's evaluation of Claimant's symptoms.

## Conclusion

The decision of the Commissioner is supported by substantial evidence and the correct legal standards were applied. Therefore, the Magistrate Judge recommends for the above and foregoing reasons, the ruling of the Commissioner of Social Security Administration should be AFFIRMED. The parties are herewith given

fourteen (14) days from the date of the service of this Report and Recommendation to file with the Clerk of the court any objections, with supporting brief. Failure to object to the Report and Recommendation within fourteen (14) days will preclude appellate review of this decision by the District Court based on such findings.

    DATED this 23rd day of August, 2022.

                                              KIMBERLY E. WEST
                                              UNITED STATES MAGISTRATE JUDGE